United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Bell Northern Research, LLC, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>HMD America, Inc., and others, )<br>Defendants. ) | Civil Action No. 22-22706-Civ-Scola |

**<u>Order on Motion to Dismiss</u>**

This matter is before the Court on the motion to dismiss filed by Defendant Unisoc Technologies Co. Ltd. ("Unisoc").[1] (Mot. to Dismiss, ECF No. 91.) Plaintiff Bell Northern Research, LLC ("BNR") has responded in opposition. (Resp., ECF No. 127.) Defendant Unisoc timely replied. (ECF No. 133.) Having reviewed the briefing, the record, and the relevant authorities, the Court **grants** Defendant Unisoc's motion to dismiss. (**ECF No. 91**.)

## 1. Background

The Plaintiff brings this case asserting thirteen separate claims for patent infringement against each of the Defendants. (Compl. ¶¶ 114-388, ECF No. 1.) BNR's claims all relate to certain Nokia mobile phones and tablets, which BNR alleges infringe on multiple of its patents, all related to mobile phones and other similar devices. (*Id.* ¶¶ 41, 113.) Each individual claim is asserted against all of the Defendants and relates to one specific patent that BNR alleges each of the Defendants is infringing. (*Id.* ¶¶ 114-388.) BNR generally alleges that the Defendants in this case "make, use, sell, import and/or provide or cause to be used" the infringing Nokia phones and tablets.[2] (*Id.* ¶ 41.)

Unisoc, BNR alleges, is a Chinese corporation with its principal place of business in Shanghai, China. (*Id.* ¶ 10.) BNR alleges that Unisoc "sells and offers to sell products and services into the stream of commerce that incorporate infringing technology, knowing that they would be sold in this judicial district and elsewhere in the United States." (*Id.*) Other than identifying certain Nokia phones and tablets that it alleges infringe on its patents, BNR

---

[1] Defendant Spreadtrum Communications USA, Inc. ("Spreadtrum") originally joined the motion, but the Plaintiff has since moved to voluntarily dismiss its claims against Spreadtrum, which the Court granted. (Pl.'s Mot. to Dismiss, ECF No. 131; Order Granting Mot. to Dismiss, ECF No. 132.)

[2] Curiously, BNR does not name Nokia as a Defendant in this action.

never pleads any facts stating what "infringing technology" Unisoc actually manufactures. (*See generally id.*) In its individual counts, BNR alleges that Unisoc "ha[s] been aware" of the specific patent alleged to be infringed, at least as of the filing of this case (or a previous case which BNR voluntarily dismissed).[3] (*Id.* ¶¶ 129, 151, 173, 197, 217, 237, 256, 278, 299, 358, 382.) BNR's complaint contains no other allegations specifically directed at Unisoc.

In support of its motion to dismiss, Unisoc offers the jurisdictional declaration of Zhang Zhen, a vice president at the company. (Decl. of Z. Zhang ¶ 1, ECF No. 91-1.) Mr. Zhang's declaration, although short, establishes that Unisoc manufactures "chipsets" that customers incorporate into mobile phones and similar devices. (*Id.* ¶ 11.) Mr. Zhang states that Unisoc has no operations in Florida (or the United States generally), does not distribute products in Florida (or the United States), does not provide "post-sales service or support" in Florida (or the United States), has no employees in Florida (or the United States), does not maintain any real property in Florida (or the United States), and does not own a bank account or pay taxes in Florida (or the United States). (*Id.* ¶¶ 5-10.) Rather, Unisoc sells its chipsets to other companies that then incorporate those chips into their mobile phones and tablets. (*Id.* ¶ 11.) Unisoc has no control over its chipsets once those customers purchase them, and those customers do not inform Unisoc of the ultimate destination of their finished products. (*Id.*) Finally, Mr. Zhang states that "Unisoc does not specifically design its chipsets to meet the requirements of the market of the United States." (*Id.* ¶ 12.)

In response, BNR offers the jurisdictional declaration of Christopher Clayton, one of its attorneys. (Decl. of C. Clayton ¶ 1, ECF No. 127-1.) Effectively, Mr. Clayton's declaration serves as a vehicle to introduce screen captures of the webpages of several Defendants, including Unisoc. (*Id.* ¶¶ 3-17.) Theses webpage captures serve to establish the following facts. First, Unisoc maintains a website, on which it advertises its chipsets and promotes the fact that its chipsets are incorporated into multiple Nokia devices. (*Id.* Ex. A at 1-4, 10-11, 13-15, 18-20.) Unisoc does not, however, offer its chipsets or the identified Nokia devices for sale on its website. (*Id.*) Instead, its website includes links to Nokia's website where it references those devices. (*Id.*) Nokia's website also appears to advertise the existence of the mobile phones and tablets in question, although like Unisoc, it does not appear to offer the devices for sale online. (*Id.* Ex. A at 5, 8, 12, 16-17, 21-23.) Instead, BNR provides links

---

[3] That prior case, Case Number 1:22-cv-21035-RNS, was filed on April 6, 2022, and voluntarily dismissed by BNR on August 25, 2022. BNR refiled this case, as it currently stands, on the same day it dismissed the prior case. (ECF No. 1.)

to Best Buy and Walmart's websites, where the relevant Nokia devices may be purchased in the United States.[4] (*Id.* Ex. A at 6-7, 9, 24.)

Based upon the allegations of the complaint and the statements in Mr. Zhang's jurisdictional declaration, Unisoc argues that the Court lacks both general and specific jurisdiction over it because (1) Unisoc lacks sufficient minimum contacts with Florida and (2) the exercise of personal jurisdiction would not comport with due process.[5] (Mot. at 6-8.) In response, BNR argues that its jurisdictional allegations and the supplements in Mr. Clayton's jurisdictional declaration satisfy the requirements to establish personal jurisdiction, especially under the "stream of commerce" test.[6] (Resp. at 3-7.)

## 2. Legal Standard

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must initially establish a *prima facie* case of personal jurisdiction, after which the burden shifts to the defendant to counter the plaintiff's allegations. *See id.* at *7. If the defendant meets this burden, the plaintiff must produce evidence to support jurisdiction—merely rearticulating its allegations is not sufficient. *See id.* (quoting *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986)). Where evidence conflicts, the court must "construe all reasonable inferences in favor of the non-movant plaintiff." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

## 3. Discussion

Unisoc presents sufficient evidence through its jurisdictional declaration to overcome any of BNR's jurisdictional allegations, and BNR fails to present sufficient evidence in turn to support its allegations. While BNR's allegations satisfy Florida's long-arm statute, the constitutional requirements of due process do not support the Court's ability to exercise personal jurisdiction. Rather, BNR fails to establish that Unisoc has sufficient minimum contacts with Florida, and Unisoc sufficiently demonstrates that the exercise of personal

---

[4] Best Buy Co., Inc., Best Buy Stores L.P., and Walmart Inc. are also Defendants in this action, but do not join in this motion.

[5] Unisoc also argues that BNR fails to state a claim upon which relief can be granted in each of its claims for patent infringement, but the Court declines to address those arguments because, as it discusses later, it cannot exercise personal jurisdiction over Unisoc. (Mot. at 8-12.)

[6] BNR never argues in response that the Court may assert general personal jurisdiction over Unisoc, so the Court does not it.

jurisdiction here would not comport with traditional notions of fair play and substantial justice.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*

In federal-question cases, such as patent-infringement lawsuits, a court must first ensure that it has personal jurisdiction over the defendant under the relevant state's long-arm statute. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855–56 (11th Cir. 1990); *see* Fed. R. Civ. P. 4(k)(1)(A). Florida's long-arm statute "must be strictly construed, and any doubts about the applicability of the statute are resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *See Interim Healthcare*, 2020 WL 3078531, at *8 (quoting *Gadea v. Star Cruises, Ltd.*, 949 So.2d 1143, 1150 (Fla. 3d DCA 2007)). If personal jurisdiction is appropriate under the state long-arm statute, the court must then "analyze this long-arm jurisdiction under the due process requirements of the federal constitution." *Cable/Home Commc'n*, 902 F.2d at 857.

## A. Florida Long-Arm Statute

Under Fla. Stat. § 48.193(1)(a)(2), a nonresident is subject to personal jurisdiction in Florida "for any cause of action arising from . . . committing a tortious act within Florida." *See* Fla. Stat. § 48.193(1)(a)(2) (cleaned up). This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts "cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir. 1999). For the purposes of this analysis, patent infringement is considered a tort. *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1314 (S.D. Fla. 2006) (Dimitrouleas, J.) ("In determining whether jurisdiction can be established under tortious conduct provisions of a state long-arm statute, courts have held that patent infringement constitutes a tortious act for the purposes of establishing personal jurisdiction.")

The Plaintiff alleges that Unisoc "sells and offers to sell products and services into the stream of commerce that incorporate infringing technology, knowing that they would be sold in this judicial district and elsewhere in the

United States." (Compl. ¶ 10.) Although Unisoc rebuts the allegation that it sells the allegedly infringing Nokia phones and tablets, it does not specifically challenge that the devices are sold in some form in Florida. (Decl. of Z. Zhang.) This allegation, then, although threadbare and nearly conclusory, offers just enough to meet the requirements of Florida's long-arm statue: it alleges that Unisoc makes an infringing product, and that product is sold in Florida, so Unisoc is alleged to be committing a tort in Florida. Fla. Stat. § 48.193(1)(a)(2); *Elite Aluminum*, 451 F. Supp. 2d at 1314.[7]

### B. Due Process

While personal jurisdiction is warranted under Florida's long-arm statute, the Court must assure itself that the exercise of personal jurisdiction is consistent with due process. Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotations omitted). This liberty interest is particularly acute where the alleged contacts at issue occurred through the Internet. Activity posted online could be shared across hundreds of jurisdictions without the defendant's intent or knowledge. Such activity could easily bring a defendant into a jurisdiction based only on "random, fortuitous, or attenuated contacts" with the forum. *See id.* at 475 (cleaned up). That, due process does not permit.

With that in mind, the Eleventh Circuit uses a three-part test[8] to determine whether the exercise of personal jurisdiction comports with due process:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;

---

[7] The Plaintiff argues in the alternative that the "national long-arm statute" of Rule 4(k)(2) also confers personal jurisdiction in this district. (Resp. at 11.) The Court declines to consider this argument for two reasons. First, the Plaintiff does not plead jurisdiction under Rule 4(k)(2) in the complaint. (Compl. ¶ 26.) Second, courts have expressed doubt whether "general jurisdiction over a foreign defendant could ever be available under Rule 4(k)(2)." *Esterina Giuliani v. NCL (Bahamas) Ltd.*, No. 1:20-cv-22006, 2021 WL 4099502, at *9 (S.D. Fla. Sept. 8, 2021) (Gayles, J.). Nonetheless, because Florida's long-arm statute is met, the Court need not address this point.

[8] While the unique difficulties of determining personal jurisdiction where the contacts occurred online may necessitate a different test, the Eleventh Circuit has continued to apply this three-part test where the website is "commercial and fully interactive." *Louis Vuitton*, 736 at 1355 n.10.

(2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
(3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton*, 736 F.3d at 1355 (internal quotation marks omitted).

As to the first prong (*arising out of or relatedness*), a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. As to the second prong (*purposeful availment*), a court may apply the traditional *minimum-contacts test*, or, in intentional-tort cases, may utilize the *effects test*. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356 (citation omitted). "This occurs when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (cleaned up). As to the third prong (*fair play and substantial justice*), a court should "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (quotation marks omitted).

Therefore, the Court turns to the three tests identified above: (1) arising out of or relatedness; (2) purposeful availment; and (3) fair play and substantial justice.

## (1) Arising Out of or Relatedness

"A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (cleaned up). Unisoc has **no** contacts with Florida, however, other than a website that is accessible in Florida. (Decl. of Z. Zhang ¶ 1-12; Decl. of C. Clayton Ex. A.). Because this Court has previously assumed the existence of a website accessible in Florida is sufficient to meet the relatedness test, however, the Court will do so again here.[9] *Frida Kahlo Corp. v. Pinedo*, No. 18-21826-Civ, 2021 WL 4147876, at *5 (S.D. Fla. Sept. 13, 2021) (Scola, J.).

---

[9] The Court must note that it assumes this portion without deciding it for two reasons: first, the courts are still contested on whether the existence of a non-interactive website is sufficient to meet the relatedness test; and second, the Court finds that the purposeful availment and substantial justice tests are not met here, in any case.

**(2) Purposeful Availment – Minimum Contacts Test and the Stream of Commerce**

Applying the "minimum contacts" test—specifically, the "stream of commerce" test discussed by the Supreme Court in *Asahi*—the Court finds that BNR has not met its burden, either in its jurisdictional allegations or in its supplementary jurisdictional evidence. *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113-14 (1987). Under the "minimum contacts" test, the contacts must "(1) [be] related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed [itself] of the privileges of doing business within the forum; and (3) [be] such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. In particular, the Court finds that the Plaintiff has not met the second and third prongs, because BNR cannot point to a specific act where Unisoc purposefully availed itself of doing business in Florida, and nothing in BNR's allegations or supplemental evidence demonstrates that Unisoc could have reasonably anticipated being haled into court in Florida.

Before explaining why BNR fails to satisfy these two prongs, the Court must first address the "stream of commerce" test, how it affects the Court's minimum contacts analysis, and explain why the primary case that BNR relies on for its argument—*Viavi Solutions Inc. v. Zhejiang Crystal-Optech Co Ltd.*—is not helpful in addressing the parties' dispute here. No. 21-00378-Civ, 2022 U.S. Dist. Lexis 205106 (E.D. Tex. Nov. 10, 2022).

The Court begins with the Supreme Court's discussion of the "stream of commerce" test in *Asahi* because the parties rely heavily on it in their briefing (likely because, absent this consideration, Unisoc completely lacks any meaningful contacts with Florida). 480 U.S. at 113-14. In *Asahi*, Petitioner Asahi Metal Industry Co., Ltd. ("Asahi," a Japanese corporation) manufactured tire valve assemblies in Japan. *Id.* at 105-06. One of its valve assemblies was eventually involved in a motorcycle accident in California, allegedly causing the accident at least in part when the motorcycle's tire exploded. *Id.* The victim of the motorcycle accident named Cheng Shin Rubber Industrial Co., Ltd. ("Cheng Shin," a Taiwanese corporation) as a defendant in a California state-court action because Cheng Shin had manufactured the motorcycle's tire. *Id.* Cheng Shin, in turn, sought indemnity from Asahi because it had purchased the tire's valve assembly from Asahi. *Id.*

Of relevance to the Court here, Asahi challenged the California court's jurisdiction over it based on several facts: (1) it was a Japanese corporation, based in Japan, that operated in Japan; (2) its sales to Cheng Shin took place in Taiwan; and (3) it delivered the tire valve assemblies to Cheng Shin in

Taiwan. *Id.* at 106-07. While the California courts determined that they could exercise personal jurisdiction over Asahi based on Asahi's status as a company doing "business on an international scale," the Supreme Court ultimately held that Asahi was not subject personal jurisdiction in California under the due process protections of the Fourteenth Amendment. *Id.* at 113-14.

In arriving at this conclusion, however, the Supreme Court fractured into several pluralities and reached three different outcomes with regards to whether Asahi had "sufficient minimum contacts" with California to justify the exercise of specific personal jurisdiction.[10] *Id.* at 113-14, 121-22.

Writing for the plurality with regards to minimum contacts, Justice O'Connor developed what has since been termed the "stream of commerce" test or more clearly the "stream of commerce plus" test. *Id.* at 113. Under this test, a finding of specific personal jurisdiction requires "something **more** than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the defendant." *Id.* at 111 (emphasis added). In other words, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* at 112. Rather, a defendant must undertake some additional act meant to purposefully direct its conduct toward the forum state, such as designing its product for that state's market, advertising in the state, or marketing through a specific distributor in that state. *Id.* Based on this formulation of the minimum contacts requirement, the plurality determined that Asahi did not have sufficient minimum contacts with California. *Id.*

In his concurrence, Justice Stevens neither affirmatively endorsed nor expressly disavowed the plurality's test, but instead found that the plurality misapplied its own test on the facts of the case. *Id.* at 121-22. Justice Stevens thought that the large number of units of valve assemblies that Asahi produced (over 100,000 annually, for several years) was sufficient to find purposeful availment. *Id.*

Finally, Justice Brennan (joined by Justices White, Marshall, and Blackmun) disagreed with the plurality's formulation of the "stream of commerce plus" test. Rather, he thought that Asahi's awareness of the likelihood that its valve assemblies would reach California through the stream of commerce after it sold them to Cheng Shin, knowing that Cheng Shin did

---

[10] Of note, however, and as the Court addresses in greater detail later, the Justices unanimously agreed that Asahi could not be subject to specific personal jurisdiction because the facts presented failed to satisfy the "fair play and substantial justice" requirement. *Id.* at 114, 121.

business in California, was sufficient on its own to establish minimum contacts. *Id.* at 120-21.

This brings the Court to why *Viavi*—the case upon which the Plaintiff bases its jurisdictional argument—is not particularly helpful under these circumstances. (Resp. at 3-7); 2022 U.S. Dist. Lexis 205106. In *Viavi*, the Eastern District of Texas found that a Chinese manufacturer of camera filters for Samsung phones was subject to specific personal jurisdiction on the plaintiff's patent-infringement claims under both *Asahi* "stream of commerce" tests. 2022 U.S. Dist. Lexis 205106 at *9, 14-15.

There are two key distinctions between *Viavi* and this case. First, *Viavi* does not conduct much analysis of the *Asahi* tests—instead, it simply finds that both tests would be satisfied, without exploring the distinctions between them. *Id.* at 14-15. Second, *Viavi* expressly observed that the defendant in that case was alleged to have specifically designed the camera filters in question for sale in the United States and Texas markets. *Id.* at *9. Although *Viavi* does not explicitly point this out, that key fact meant the defendant there met one of the possible "plus" factors required in the *Asahi* plurality's test. *Id.*; *Asahi*, 480 U.S. at 113-14.

Here, instead, the Court is left with jurisdictional allegations and evidence that establish, at best, only that Unisoc was aware that its chipsets **might** be sold in the United States and Florida. (Compl. ¶ 10; Decl. of Z. Zhang ¶¶ 1-12; Decl. of C. Clayton Ex. A.) The Plaintiff never alleges or demonstrates that Unisoc designed the chipsets for the American market or for sale in Florida in particular, and Unisoc expressly states that it does not design the chipsets at issue for the American market. (*See generally* Compl.; *see also* Decl. of C. Clayton; Decl. of Z. Zhang ¶ 12.) Although BNR alleges that Unisoc sells its products in the United States, Unisoc's jurisdictional declaration contests that allegation. (*Compare* Compl. ¶ 10 ("Upon information and belief, Defendant [Unisoc] sells and offers to sell products and services throughout the United States, including in this judicial district . . . .") *with* Decl. of Z. Zhang ¶ 5 ("Unisoc does not develop, design, manufacture, advertise, market, sell, import, or distribute products in the United States.").) BNR attempts to rebut Unisoc's declaration by offering screenshots of Unisoc's webpage, but the screenshots actually prove Unisoc's case: Unisoc does not offer Nokia phones with the allegedly infringing chipsets for sale on its website. (Decl. of C. Clayton Ex. A.) Instead, through a complicated commercial chain, one may eventually buy a Nokia phone in Florida (that may or may not have a Unisoc chip) through Best Buy and Walmart's websites. (*Id.*) And Unisoc's website does not even link directly to these websites; rather, it only links to Nokia's website. (*Id.*)

Simply put, Unisoc lacks any meaningful contacts with Florida or with the United States generally. BNR fails to rebut Unisoc's jurisdictional evidence in its response, and Unisoc contests the only allegation that could have created a sufficient contact with Florida. (Compl. ¶ 10; Decl. of Z. Zhang ¶ 5.) There is no "plus" factor here that would meet Justice O'Connor's test. *Asahi*, 480 U.S. at 113-14. The Court cannot determine any act by which Unisoc purposefully availed itself of the privilege of doing business in Florida. *Id.* It could, conceivably, find that Unisoc may have reasonably anticipated being haled into court in Florida if it applied Justice Brennan's simpler test from *Asahi*. *Id.* at 121. But that determination alone would not support a finding that personal jurisdiction may appropriately be exercised here.

Ultimately, the Court need not decide which *Asahi* test to definitively apply here because, as it observes below, the allegations and jurisdictional evidence presented here do not meet the "fair play and substantial justice" prong of the specific personal jurisdiction analysis, just as in *Asahi*. *Id.* at 114-15.[11] The fact that the <u>only</u> test the Plaintiff can possibly hope to meet here is the lesser, "awareness alone is enough" *Asahi* test—not the more stringent "stream of commerce plus" test—bolsters the Court's conclusion that it would not comport with due process to exercise specific personal jurisdiction over Unisoc. *Id.* at 113-14, 121. Accordingly, the Court finds that BNR has failed to meet both the second ("purposeful availment") and third ("reasonable anticipation") prongs of the minimum contacts test.

### (3) Fair Play and Substantial Justice

A defendant must show that personal jurisdiction offends "fair play and substantial justice" only if the plaintiff meets its burden on the two first prongs of the three-part due process test. *See Louis Vuitton*, 736 F.3d at 1355. The Plaintiff fails to meet its burden, above, and Unisoc meets its burden on this last test. To establish that outcome, the Court looks to the following: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (cleaned up).

---

[11] The Court's determination on this point is not aided by the fact that the Eleventh Circuit, and other circuits whose opinions might be persuasive here, have not decided which *Asahi* test should be applied in a minimum contacts analysis. *See, e.g., Vermeulen v. Renault, U.S.A., Inc*, 985 F.2d 1534, 1548 n.17, 1549-50 (11th Cir. 1993) (observing conflicts among courts about which *Asahi* test to apply and declining to choose because, in that case, the defendant-appellee had enough contacts with the United States and Georgia to satisfy the "stream of commerce plus" test); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566-67 (Fed. Cir. 1994) (similarly observing the conflict and applying both *Asahi* tests in a patent-infringement claims context).

First, the Court finds that litigation in Florida would be burdensome for the Defendant—a Chinese corporation that has no connection to Florida. (Compl. ¶ 10; Decl. of Z. Zhang ¶¶ 1-12.) Second, Florida's interest in this dispute—at least, with regards to Defendant Unisoc—is minimal. While some of the <u>other</u> Defendants are alleged to have offices or operations in Florida and are alleged to have offered infringing products for sale in Florida, there has been no showing of the impact any specific actions in Florida by Defendant Unisoc to raise Florida's interest beyond a generalized interest in enforcing federal law. (Decl. of Z. Zhang; Decl. of C. Clayton Ex. A.) Third, while the Plaintiffs have an interest in obtaining convenient and effective relief, that factor alone does not override the substantial burden that would be placed on Unisoc to litigate in Florida or Florida's relatively low interest in this dispute with regards to Unisoc. Fourth, the judicial system has an interest in resolving the dispute, as the Plaintiffs' claims arise from federal law. But this factor is also not sufficient to tip the scales in the Plaintiff's favor.

In total, these factors weigh against the exercise of personal jurisdiction. The Court finds this to be the case based, importantly, on the Supreme Court's unanimous holding in *Asahi*. There, the Supreme Court held that the exercise of personal jurisdiction would not comport with the requirements of fair play and substantial justice based on nearly identical facts to those here. 480 U.S. at 113-14, 121.[12] Accordingly, the Court finds that the exercise of personal jurisdiction over Defendant Unisoc is incompatible with the Due Process Clause and the protections that it affords. Therefore, the Court grants Unisoc's motion to dismiss for lack of personal jurisdiction.

### C. The Plaintiff is Not Entitled to Jurisdictional Discovery

Finally, the Court declines to grant BNR's belated and improper request for jurisdictional discovery. (Resp. at 13.) BNR inserts its request at the end of its response to Unisoc's motion, does not elaborate what documents or information it would seek through jurisdictional discovery, and never makes a separate motion to conduct jurisdictional discovery. *Wolf v. Celebrity Cruises,*

---

[12] Although the Justices could not reach a majority opinion on the exact application (or outcome) of the "stream of commerce" test, all Justices agreed that Asahi was not subject to personal jurisdiction because the fair play and substantial justice prong could not be met. Justice O'Connor, writing for the plurality, determined the fair play and substantial justice prong could not be met because the burden on Asahi (a Japanese corporation) to litigate in California would be "severe." *Id.* at 113-14. Justice Brennan (joined by Justices White, Marshall, and Blackmun) and Justice Stevens (also joined by Justices White and Blackmun) agreed with Justice O'Connor's opinion with regards to the fair play and substantial justice prong and, as such, concurred in the Court's judgment that Asahi was not subject to specific personal jurisdiction. *Id.* at 121.

*Inc.*, 683 F. App'x 786, 792 (11th Cir. 2017) (affirming district court's denial of request for jurisdictional discovery where the plaintiff made only a "general request for jurisdictional discovery" that was "buried withing his response to [the defendant's] motion to dismiss" and that failed "to specify what information [the plaintiff] sought or how that information would bolster his allegations."). Accordingly, the Court denies the Plaintiff's request.

### 4. Conclusion

For the reasons set out above, the Court **grants** Defendant Unisoc's motion to dismiss.[13] (**ECF No. 91**.) The Plaintiff's claims against Defendant Unisoc are **dismissed**. The case shall remain **open** because the Plaintiff continues to assert claims against the remaining Defendants.

**Done and ordered** at Miami, Florida, on March 8, 2023.

Robert N. Scola, Jr.
United States District Judge

---

[13] As the Court holds that the exercise of personal jurisdiction over Defendant Unisoc is not appropriate, the Court need not reach the question of the sufficiency of the Plaintiff's pleadings under Rule 12(b)(6).