IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION NO. 1:22-CV-22706-RNS

BELL NORTHERN RESEARCH, LLC,

       Plaintiff

v.

HMD AMERICA, INC.; HMD GLOBAL OY;
SHENZHEN CHINO-E COMMUNICATION
CO., LTD.; HON HAI PRECISION
INDUSTRY CO., LTD; TINNO MOBILE
TECHNOLOGY CORP.; SHENZHEN TINNO
MOBILE CO., LTD.; TINNO USA, INC.;
UNISOC TECHNOLOGIES CO., LTD.;
SPREADTRUM COMMUNICATIONS USA,
INC.; WINGTECH TECHNOLOGY CO.;
LTD.; WINGTECH INTERNATIONAL, INC.;
BEST BUY CO., INC.; BEST BUY STORES
L.P.; TARGET CORP.; WALMART INC.,

       Defendants.
                                                /

**DEFENDANTS' MOTION TO SEVER AND STAY THE CLAIMS
AGAINST THE RETAIL DEFENDANTS**

      Defendants HMD America, Inc., HMD Global Oy (collectively, "HMD") and Best Buy Co., Inc., Best Buy Stores L.P., Target Corp., and Walmart Inc. (collectively, the "Retail Defendants"), by and through their undersigned counsel and pursuant to the Court's inherent authority to control its docket and Local Rule 7.1, hereby file this motion to stay the claims against the Retail Defendants until the claims against HMD in this case are resolved. Plaintiff has not yet taken a position on this motion. Defendants state the following in support of the motion.

**I.      INTRODUCTION**

Plaintiff Bell Northern Research, LLC ("Bell Northern") asserts 12 patents[1] against dozens of mobile devices manufactured on behalf of HMD. Those patents are directed to various technical features that are related to mobile devices—from ways they can interact with a wireless network to the sensors that can be incorporated into them. But Bell Northern does not just accuse HMD of infringement. Bell Northern has also alleged infringement by some of HMD's customers that are *retailers*—Best Buy Co., Inc., Best Buy Stores L.P., Target Corp., and Walmart Inc. (the "Retail Defendants")—for simply serving as a sales conduit for HMD's products. In such situations, courts routinely apply the "customer-suit doctrine" and stay the claims against the retailer customers (like Best Buy, Target, and Walmart) while the claims against the manufacturer (HMD)—the true defendant—are litigated. The application of this doctrine is warranted here.

Even if the Court does not apply the customer-suit doctrine, however, a stay is still appropriate under the traditional stay factors because: (1) Defendants are likely to succeed on the merits; (2) the Retail Defendants will suffer substantial harm in being forced to litigate a case in which their technical involvement is nonexistent; (3) Bell Northern will not be harmed by a stay because its infringement claims against the Retail Defendants in this case rise and fall with those of HMD; and (4) the public interest warrants it (indeed, public-interest considerations pervade the rationale of the customer-suit doctrine).

For at least these reasons, Defendants respectfully request that the claims against the Retail Defendants be stayed until the claims against HMD have been litigated.

---

[1] Bell Northern originally asserted 13 patents against Defendants but has since agreed to dismiss U.S. Patent No. 6,941,156. The parties are coordinating a formal submission to the Court.

## II.     FACTUAL BACKGROUND

HMD coordinates the manufacture and sale of all Nokia-branded mobile phones and tablets. HMD sells its products throughout the United States by partnering with several distributors and retailers, including the Retail Defendants Best Buy, Target, and Walmart.

Bell Northern is a non-practicing, patent-licensing entity that has asserted 12 patents against both HMD and the Retail Defendants. Those patents cover various technologies related to the composition and operation of mobile devices, including processor-chip configurations, wireless connection processes, network-congestion handling, remote loss/theft alarms, and more. The claims of its patents are directed to both "apparatuses" (covering what the product *is*) and "methods" (covering how the product *operates* or is *used*).

Bell Northern's infringement claims against the Retail Defendants derive entirely from its infringement claims against HMD—that is, Bell Northern alleges infringement by the Retail Defendants for simply selling and/or offering to sell the finished *HMD* products that are accused of infringement. *See, e.g.*, Dkt. 1 ¶ 31 ("Upon information and belief, Defendant Best Buy Co., Inc. has committed acts of infringement in this District (including, but not limited to, offers for sale of the Accused Instrumentalities via Bestbuy.com and its physical locations) and, on information and belief, actual sales of the Accused Instrumentalities at its physical locations"); *id*. ¶¶ 32–34 (other Retail Defendants). No other activities by the Retail Defendants are at issue in this case. Because the Retail Defendants are not involved in the design, manufacture, or technical operation of any of HMD's products, the Retail Defendants have no insight into the merits of Bell Northern's infringement claim; at best, they know only how HMD's products have sold in their stores.

### III. LEGAL STANDARD

#### A. The Customer-Suit Doctrine

The "first-filed" or "first-to-file" rule generally holds that the first of separate but related litigations to establish jurisdiction ordinarily takes precedence. *See, e.g.*, *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) ("[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."). However, when a patent owner files a patent lawsuit against a manufacturer and its customers that are the retailers for the manufacturer's products, the action against the retailer customers is routinely stayed pending the outcome of the lawsuit against the manufacturer. This exception to the first-filed rule is called the customer-suit doctrine.

The customer-suit doctrine initially arose to cover situations such that, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (citations omitted). The Federal Circuit has since "extended the principles underlying the 'customer suit' doctrine to cases in which the manufacturer and the customer are joined in the *same* action for the *same* infringement claims." *Tile Tech, Inc. v. Appian Way Sales, Inc.*, No. C17-1660, 2018 WL 2113958, at *2 (W.D. Wash. May 8, 2018) (collecting cases; emphasis added); *Nintendo*, 756 F.3d at 1365 (applying customer-suit doctrine to a single action involving both a manufacturer and retailers because "the same general principles govern").

"This 'customer-suit' exception … exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365; *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

1990) ("[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." (citation omitted)). The critical question in deciding whether to apply the doctrine "is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463. On this basis, suits against customers are routinely stayed until the claims against the manufacturer are fully litigated. *See, e.g.*, *Nintendo*, 756 F.3d at 1365 (reversing denial of stay); *Katz*, 909 F.2d at 1464 (affirming stay); *E-Z Dock, Inc. v. Snap Dock, LLC*, No. 21-CV-450, 2022 WL 326621, at *2 (M.D. Fla. Feb. 3, 2022).

Courts will sometimes issue a stay and then transfer the manufacturer or customer to a more appropriate venue. *See, e.g.*, *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 15-CV-1202, 2016 WL 1659924, at *2 (E.D. Tex. Apr. 26, 2016) (collecting cases). Courts—including in this district—have also stayed cases when transfer is not an issue and the suit against manufacturer and customer would have proceeded in the same forum. *E-Z Dock*, 2022 WL 326621, at *2; *Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 16-CV-60693, 2016 WL 6678525, at *4–5 (S.D. Fla. June 8, 2016).

### B.     Traditional Stay Factors

Separate from the customer-suit doctrine, courts also have the power to stay claims if the equities warrant it. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (per curiam). This Court typically considers four factors to determine whether a stay is appropriate: (1) the likelihood of the moving party ultimately prevailing on the merits; (2) the extent the moving party would be irreparably harmed; (3) the potential for harm to the opposing party if the stay is issued; and (4) whether issuing a stay would be in the public interest. *Latele Prods., Inc. v. Azteca*

*Int'l Corp.*, No. 16-CV-25347, 2018 WL 11350654, at *2 (S.D. Fla. Dec. 18, 2018). "Because determining a probable likelihood of success on the merits is 'often difficult in the early stages of litigation,' the Court may grant the motion to stay based on the weight of the other factors, if these other factors 'weigh heavily' in favor of granting the stay." *Id.* (quoting *Guirola–Beeche v. U.S. Dep't of Just.*, 662 F. Supp. 1414, 1417–18 (S.D. Fla. 1987)).

While there is some overlap between the traditional stay factors and the **rationale** in applying the customer-suit doctrine, the inquiries are not the same. *See Katz*, 909 F.2d at 1463.

## IV. ARGUMENT

Bell Northern's infringement claims against the Retail Defendants should be stayed, either under the customer-suit doctrine or under the traditional stay factors (or both) because each factor weighs in the Retail Defendants' favor.

### A. The Court Should Apply the Customer-Suit Doctrine and Stay the Claims Against the Retail Defendants

This action is the exact sort of case for which the customer-suit doctrine was intended, and thus Bell Northern's claims against the Retail Defendants should be stayed.

Specifically, in *Nintendo*, the Federal Circuit evaluated patent infringement claims brought against Nintendo and eleven of its retailers to try to support venue in Texas—away from Nintendo's headquarters. 756 F.3d at 1364. In deciding whether to apply the customer-suit doctrine to a single suit involving both the manufacturer and retailers, the Federal Circuit recognized that Nintendo alone "coordinate[d] the manufacture and marketing of its products in the United States" and possessed nearly all the technical information relevant to the suit. *Id.* at 1365. The retailers, in contrast, had no "information relating to the development or design of the accused Nintendo products" and simply agreed to be bound by any determination litigated by Nintendo. *Id.* Accordingly, the Federal Circuit concluded, "[s]ince Nintendo's liability is predicate to recovery

from any of the [retail] defendants, the case against Nintendo must proceed first, in any forum." *Id.* at 1366. The Federal Circuit then ordered the district court to stay the claims against the retailers (and transfer the claims against Nintendo to a more appropriate venue).[2] *Id.*

The same relationship between HMD and the Retail Defendants exists here, and thus the present action should be stayed. *Id.* at 1363. All the products Bell Northern accuse of infringement—dozens of Nokia-branded mobile devices—are supplied to the Retail Defendants by HMD. *Compare, e.g.*, Ex. A at 3–7 (identifying Nokia-branded devices for HMD), *with* Ex. B at 3–7 (identifying same Nokia-branded devices for Retail Defendants). And every patent claim Bell Northern asserts implicates the technical composition and/or operation of those products. *See, e.g.*, Dkt. 1 ¶¶ 114–158, 286–306 (accusing proximity features), 159–244, 342–388 (accusing wireless-connection features), 245–263 (accusing wireless-handoff features), 264–285 (accusing device-alarm features), 307–341 (accusing chipset assembly). If anyone, it is HMD—not the Retail Defendants—that possesses the documents, information, and witnesses relevant to the merits of Bell Northern's infringement claims.

In contrast, the Retail Defendants are a textbook definition of a "customer" under the doctrine. *See, e.g.*, *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) ("[A] customer [is one] who is simply a reseller of the accused goods"). Critically, Bell Northern does not identify a single independent act of infringement specific to the Retail Defendants other than that they sell or offer to sell products ***provided to them by HMD***. Dkt. 1 ¶¶ 31–34. But that just means that the claims against the Retail Defendants depend upon those asserted against HMD;

---

[2] While *Nintendo* also involved a venue transfer that further weighed the equities in Nintendo's favor, as discussed previously, this Court has recognized that transfer is not a prerequisite to the application of the customer-suit doctrine. *See Thermolife,* 2016 WL 6678525, at *4–5.

recovery against them is "predicate" on proving HMD's infringement first. *See Tissue Anchor Innovations, LLC v. Fountain Valley Reg'l Hosp.*, C.A. No. 19-00791, 2019 WL 8219779, at *3 (C.D. Cal. Nov. 25, 2019) ("[T]here is no way that the [customer] Defendants could be found to have infringed … given that they are mere purchasers of [the manufacturer's] products and can add little in the way of how the product works."); *see also Nintendo*, 756 F.3d at 1366. And like the retailers in *Nintendo*, the Retail Defendants here agree to be bound by this Court's determination with respect to HMD and the HMD products. *See, e.g.*, *Upaid Sys., Ltd. v. CleanDan*, No. SA CV18-00619, 2018 WL 5279567, at *3 (C.D. Cal. July 25, 2018) (finding agreement to be bound "significant and weigh[ed] in favor of a stay under the customer-suit exception."); *Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 17 C 9175, 2018 WL 3059604, at *6 (N.D. Ill. June 20, 2018) (reasoning that customer agreements to be bound by infringement and validity determinations in manufacturer case favored granting stays under customer-suit doctrine). At bottom, a stay is warranted here because "the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463.

While some courts have drawn a distinction between applying the customer-suit doctrine for apparatus claims but not method claims, the distinction is narrow and inapplicable here. In *Erfindergemeinschaft*, for instance, a patentee sued a drug manufacturer and one of its distributors for infringing a patent that claimed a method of administering a drug. 2016 WL 1659924, at *1. Because the claims required administration of the drug, "there [was] no suggestion that [the drug itself] infringes the [] patent 'off the shelf,'" like the products in *Nintendo*. *Id.* at *3. In analyzing the claims against each defendant, the district court found that "the issue of infringement is not entirely common" between the manufacturer and distributor. *Id.* On the one hand, for instance, the distributor could be liable for direct infringement if it ever administered the drug itself. *Id.* On the

other, the manufacturer could be liable for induced infringement if it encouraged *any* direct infringer (not just the one distributor) to administer the drug. *Id.* The district court found the customer-suit doctrine inapplicable because, in that instance, "proof of infringement by [the manufacturer] would not necessarily establish infringement by [the distributor]." *Id.* This was, in essence, an issue of commonality of the claim, and not the type of patent claim being asserted.

That distinction is inapplicable here, and the issue of potential infringement for the Retail Defendants is disposed of completely by the issue of potential infringement for HMD. Bell Northern identifies no independent actions by the Retail Defendants—such as the Retail Defendants performing any claimed method themselves. Nor could it, as most of the asserted method claims are directed to back-end processes of the mobile devices often invisible even to the end user. *See, e.g.*, Dkt. 1-21 ('862 Patent, claiming "[a] method for feeding back transmitter beamforming information"), 1-22 ('914 Patent, claiming "[a] method for communicating information in a communication system"), 1-23 ('450 Patent, claiming "[a] method for communication" comprising various computing and transmitting steps). That is a far cry from the separate inquiries necessary to prove direct infringement against the distributor and indirect infringement against the manufacturer in *Erfindergemeinschaft*.

For these reasons, the Court should apply the customer-suit doctrine and stay the claims against the Retail Defendants as HMD litigates the merits.

**B.** **The Court Should Apply General-Stay Principles and Stay the Claims Against the Retail Defendants**

Regardless of the applicability of the custom-suit doctrine here, the Court may still stay the claims against the Retail Defendants under the traditional stay factors, which all weigh in Defendants' favor.

First, Defendants believe they are highly likely to succeed on the merits with respect to all Bell Northern's infringement claims and Defendants' invalidity claims, but those claims are contested and this action is at a relatively early stage. Without addressing the merits here, a stay is warranted because the other three factors weigh heavily in favor of granting a stay. *Latele*, 2018 WL 11350654, at *1.

Second, a stay will allow the Retail Defendants to avoid much of the burdens of discovery, pretrial motions, and trial until the claims against HMD are litigated on the merits. *See Xiaohua Huang v. Open-Silicon, Inc.*, No. 18-CV-00707, 2018 WL 5099275, at *4 (N.D. Cal. Aug. 27, 2018) ("A stay with respect to Open-Silicon is appropriate under the customer-suit doctrine to spare it the burdens of trial while eSilicon litigates Mr. Huang's infringement claims with respect to its technology."); *Altair Instruments, Inc. v. Telebrands Corp.*, No. 19-cv-08967, 2020 WL 1956516, at *3 (C.D. Cal. Mar. 31, 2020) (reasoning that customer would "suffer prejudice from having to participate in a lawsuit in which it is peripherally involved, for which [the manufacturer] will bear the cost").

Third, Bell Northern would not be harmed by a stay. To start, Bell Northern does not practice its patents, Dkt. 1 ¶ 40, and thus any infringement that may ultimately be found can be adequately compensated by damages. But even then, Bell Northern may have nothing to recover from the Retail Defendants if infringement is ultimately proved against HMD first. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) ("[P]arties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale. Each joint tort-feasor is liable for the full amount of damages (***up to a full single recovery***) suffered by the patentee.") (citations omitted; emphasis added). But even so, because the infringement and invalidity claims involving the Retail Defendants rise and fall with those against HMD, Bell

Northern would suffer minimal additional expense to secure its recovery from the Retail Defendants.

Finally, while overlapping significantly with the rationale for the customer-suit exception, there is a public interest in protecting customers from the expense of suit when the "true defendant" is a manufacturer. *Nintendo*, 756 F.3d 1365 (explaining the purpose of the customer-suit exception is to "avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute.").

## V. CONCLUSION

For the reasons set forth above, the Court should apply the customer-suit doctrine and stay the claims against the Retail Defendants. However, if the Court is not inclined to apply the customer-suit exception, Defendants respectfully request a stay of the claims against the Retail Defendants under the traditional stay factors.

\*\*\*

## LOCAL RULE 7.1(a)(3) CERTIFICATION

The Parties have conferred in good faith regarding the relief requested in this motion. Bell Northern has not yet taken a position on the motion.

Dated: October 19, 2023

Respectfully submitted,

| | |
|---|---|
| */s/Joseph W. Bain*<br>JOSEPH W. BAIN, Esq.<br>Florida Bar No. 860360<br>Email: jbain@shutts.com<br>**SHUTTS & BOWEN LLP**<br>1100 City Place Tower<br>525 Okeechobee Boulevard<br>West Palm Beach, Florida 33401<br>Telephone: (561) 835-8500<br>Facsimile: (561) 650-8530<br><br>JODI-ANN TILLMAN, ESQ.<br>Florida Bar No. 1022214<br>Email: jtillman@shutts.com<br>**SHUTTS & BOWEN LLP**<br>200 East Broward Blvd.<br>Suite 2100<br>Fort Lauderdale, Florida 33301<br>Telephone: (561) 671-5822<br>Facsimile: (561) 650-8530<br><br>**ATTORNEYS FOR DEFENDANTS HMD AMERICA, INC., HMD GLOBAL OY, BEST BUY CO., INC., BEST BUY STORES, L.P., TARGET CORP. and WALMART INC**. | */s/ Matthew J. Moffa*<br>WILLIAM J. MCCABE, ESQ. (*pro hac vice*)<br>MATTHEW J. MOFFA, ESQ. (*pro hac vice*)<br>MATTHEW A. LEMBO, ESQ. (*pro hac vice*)<br>Email: WMcCabe@perkinscoie.com<br>Email: MMoffa@perkinscoie.com<br>Email: MLembo@perkinscoie.com<br>**PERKINS COIE LLP**<br>1155 Avenue of the Americas, 22nd floor<br>New York, NY 10036<br>Telephone: (212) 262-6900<br><br>KEVIN PATARIU, ESQ. (*pro hac vice*)<br>Email: kpatariu@perkinscoie.com<br>**PERKINS COIE LLP**<br>11452 El Camino Real<br>Suite 300<br>San Diego, CA 92013<br>Telephone: (858) 720-5700<br><br>**ATTORNEYS FOR DEFENDANTS HMD AMERICA, INC., HMD GLOBAL OY, BEST BUY CO., INC., BEST BUY STORES, L.P., and TARGET CORP.** |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of October 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Joseph W. Bain*
Joseph W. Bain

WPBDOCS 20749876 2